MICHAEL BLACKWELL,

        Plaintiff,

        v.                        Case No. 26-CV-96

JOHN DOES et al.,

        Defendants.

## SCREENING ORDER

Plaintiff Michael Blackwell, who is currently incarcerated at the Milwaukee County Jail and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motion for leave to proceed without prepayment of the filing fee and to screen the complaint.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2). The Court finds that Plaintiff lacks the assets and means to pay an initial partial filing fee, so the Court waives that obligation. 28 U.S.C. § 1915(b)(4). Plaintiff will be required to pay the $350 statutory filing fee over time as set forth in § 1915(b). Plaintiff's motion for leave to proceed without prepayment of the filing fee will be granted.

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

**ALLEGATIONS OF THE COMPLAINT**

In screening a complaint, the Court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citation omitted). The Court notes, however, that the allegations in the complaint are just that, allegations; they are Plaintiff's version of the events that have purportedly occurred. With this in mind, the Court will summarize Plaintiff's allegations as presented in the complaint.

At all times relevant to the complaint, Plaintiff was incarcerated at the Milwaukee County Jail. Plaintiff was diagnosed with Type 1 diabetes in 2008. Compl. ¶ 11, Dkt. No. 1. Plaintiff was arrested on October 10, 2025, in Cook County, Illinois as a result of outstanding warrants. *Id.* ¶ 13. On November 21, 2025, Plaintiff was transferred to Milwaukee, Wisconsin. *Id.* ¶ 14. Upon his arrival to the Milwaukee Police Department, Plaintiff complained of high glucose levels, extreme burning sensations, chest pains, and trouble breathing. *Id.* ¶ 15. He told the officer processing him that he has Type 1 diabetes and had not received insulin since 5:00 a.m. that morning. *Id.* Officers called paramedics, and the Milwaukee Fire Department responded. *Id.* ¶ 16. Paramedics conducted an accu-check, confirmed that Plaintiff's glucose level was high, and took Plaintiff to the emergency room. *Id.* Plaintiff received rapid-acting insulin, and after six hours of observation, Plaintiff was released with treatment instructions. *Id.*

Upon his return to the Milwaukee Police Department, Plaintiff was placed in an observation cell, and medical staff monitored Plaintiff's condition. *Id.* ¶ 17. Medical staff administered rapid-acting insulin in accordance with the hospital's recommendations. *Id.*

3

At approximately 12:30 a.m. on November 22, 2025, Plaintiff was taken to the Milwaukee County Jail. *Id.* ¶ 18. During the booking process and a brief examination by medical personnel, Plaintiff stated that he had Type 1 diabetes and required numerous daily injections to sustain low glucose levels. *Id.* ¶ 19. At 7:00 a.m. that day, Plaintiff had cereal with milk and apple juice for breakfast. *Id.* ¶ 20. Within 30 minutes, Plaintiff suffered extreme burning sensations, muscle stiffness, and chest pains as a result of his extreme glucose levels. *Id.* Plaintiff banged on his cell door until a correctional officer responded. Plaintiff requested to see a nurse because he was experiencing a medical emergency. *Id.*

A nurse examined Plaintiff and conducted an accu-check, which revealed that Plaintiff's glucose levels were high. *Id.* ¶ 21. The nurse asked what types of insulin Plaintiff was taking, and Plaintiff responded that he was given Aspart rapid-acting insulin and Lantus 24-hour insulin. *Id.* The nurse administered both types of insulin and inquired into Plaintiff's medical history. *Id.* ¶ 22. The nurse monitored Plaintiff closely, had Plaintiff sit outside of the office, and checked Plaintiff's glucose level every two hours. *Id.* ¶ 23. The next reading occurred at 10:00 a.m. and was also high. *Id.* The nurse called Nurse Practitioner Tammie over. *Id.* Throughout the day, Plaintiff's glucose readings remained high. Eventually his glucose levels lowered after two more injections. Nurse Practitioner Tammie prescribed Aspart insulin to be received on a sliding scale, with Lantus to be given during early morning "med pass." *Id.* ¶ 24. Plaintiff believed the Aspart was to be administered four times daily and that he would be taken to the medical unit for two days of observation. *Id.*

On the evening of November 23, 2025, Plaintiff was taken to the medical unit to begin observation. *Id.* ¶ 25. While in the medical unit, Plaintiff's glucose levels remained elevated. *Id.* ¶ 26. On November 24, 2025, Plaintiff received Lantus at approximately 5:00 a.m. and three to

4

four injections of Aspart. *Id.* On November 25, 2025, Plaintiff's glucose levels appeared to be stabilizing, and Plaintiff was placed in the intake unit. *Id.* ¶ 27. During the morning med pass at 9:30 a.m., Plaintiff was told that he would receive regular insulin. *Id.* ¶ 28. Plaintiff stated that this must be a mistake. He explained that he was to receive Aspart insulin and that his glucose reading was high after breakfast. *Id.* The med pass nurse responded that the order on her screen stated that Plaintiff was to receive regular insulin and that rapid-acting insulin was not used in the jail. *Id.* ¶ 29. Plaintiff refused to take the insulin, informing the nurse that regular insulin does not work for Plaintiff's diabetic condition. *Id.*

That afternoon, a member from the medical unit arrived at Plaintiff's cell and asked why Plaintiff refused to take the insulin. *Id.* ¶ 30. Plaintiff explained that regular insulin does not work well with Plaintiff's severe diabetic condition. *Id.* ¶ 31. The medical staff member explained that rapid-acting insulin would not be administered to a detainee confined within the jail. *Id.* Plaintiff filed numerous medical grievances stating that regular insulin does not work with his condition. *Id.* ¶¶ 32–34.

On December 2, 2025, Plaintiff was seen by Nurse Practitioner John Doe 4. Plaintiff noted his elevated glucose levels and ongoing suffering from extreme burning sensations, muscle stiffness, and chest pains. *Id.* ¶ 33. The nurse practitioner told Plaintiff he would not receive rapid-acting insulin. *Id.* ¶ 34. On December 11, 2025, Plaintiff saw Nurse Practitioner John Doe 5, and he complained that regular insulin was not mitigating his extreme glucose levels after meals. *Id.* ¶ 35. Plaintiff asserts that Nurse Practitioner John Doe 5 did not respond to his concerns. *Id.* ¶ 36. The next day, Plaintiff filed a grievance, complaining that his glucose levels were high and that his medical concerns were not being met. *Id.* Plaintiff was advised that the medical director would be consulted. *Id.*

At approximately 11:30 a.m. on December 12, 2025, the med pass nurse recorded that Plaintiff's glucose levels were high. *Id.* ¶ 37. Plaintiff received 19 units of regular insulin, and Plaintiff returned to his cell. At 1:40 p.m., the correctional officer on duty called in a medical code after Plaintiff reported that he was not "o.k." *Id.* Medical personnel arrived at Plaintiff's cell and inquired about his medical problem. *Id.* ¶ 38. Plaintiff stated that he had high glucose levels and extreme discomfort caused by burning sensations, muscle stiffness, and chest pains. *Id.* Nurse Practitioner John Doe 6 conducted an accu-check, noted that Plaintiff's glucose levels were high, and took Plaintiff to the medical unit. *Id.* ¶ 39. Plaintiff received 14 units of regular insulin and was taken back to his cell. *Id.* ¶ 40.

On December 16, 2025, at 4:00 p.m., Plaintiff was taken to the clinic to speak with Doctor John Doe 3. *Id.* ¶ 41. The doctor tried to alleviate Plaintiff's concerns about the regular insulin and noted that Plaintiff's glucose levels are low during the evening hours. *Id.* Plaintiff responded that his glucose levels are lower in the evening because that is when he receives Lantus long-acting insulin. *Id.* ¶ 42. The doctor suggested increasing the amount of regular insulin, and Plaintiff returned to his cell. *Id.*

Later that evening, Plaintiff refused regular insulin because medical staff refused to work with him to address his concerns about taking regular insulin. *Id.* ¶ 43. Plaintiff continues to receive Lantus long-acting insulin and refuses the regular insulin. *Id.* ¶ 42. Plaintiff requests a temporary restraining order and injunctive relief and seeks an award of monetary damages.

### ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S.*

*v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Because Plaintiff was a pretrial detainee at the relevant time, the Fourteenth Amendment's objective unreasonableness standard applies to his allegations that Defendants Doctor John Doe 3 and Nurse Practitioner John Doe 4–6 failed to provide proper treatment for his Type 1 diabetes.

Under this standard, once a pretrial detainee shows that a jail official's failure to act was purposeful and intentional, the sole question is an objective one: Did the defendant "take reasonable available measures to abate the risk of serious harm?" *Pittman v. Madison Cty.*, 108 F.4th 561, 566, 572 (7th Cir. 2024). "The objective reasonableness of a decision to deny medical care . . . does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable [jail official] in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570. Thus, to state a claim under the Fourteenth Amendment standard, a plaintiff must allege that (1) the defendant acted purposefully, knowingly, or perhaps even recklessly, without regard to his subjective awareness of the risk of inaction and (2) the defendant's response to the medical condition was objectively unreasonable. *Id.* at 570–72. With this standard in mind, the Court will allow Plaintiff to proceed on a Fourteenth Amendment claim against Defendants Doctor John Doe 3 and Nurse Practitioner John Doe 4–6 based on his allegations that they failed to provide proper treatment for his Type 1 diabetes.

Plaintiff asserts that John Doe 1 is the medical healthcare provider for Milwaukee County Jail and that John Doe 2 is a medical director responsible for enforcing the policies and practices within the Milwaukee County Jail medical clinic. He alleges that these Defendants had a policy of only administering regular insulin within the Milwaukee County Jail, which caused Plaintiff to

7

suffer irreparable harm and injury. He asserts that Defendants' conduct was intentional and reckless in violation of Plaintiff's constitutional rights. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), municipalities may be liable for an employer's conduct if the employee injured the plaintiff in execution of an official policy, custom, or widespread practice. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012), *abrogation on other grounds recognized in Kemp v. Fulton Cty.*, 27 F.4th 491, 494 (7th Cir. 2022) (*Monell* framework applies to private company providing medical care at correctional facility). Based on the allegations in the complaint, Plaintiff may proceed on a *Monell* claim against Medical Healthcare Provider John Doe 1 and Medical Director John Doe 2 in his official capacity.

Because Plaintiff does not know the defendants' names, the Court will add Milwaukee County Sheriff Denita Ball as a defendant for the limited purpose of helping Plaintiff identify the defendants. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996). Sheriff Ball does not have to respond to the complaint. After Sheriff Ball's attorney files an appearance in this case, Plaintiff may serve discovery requests upon Sheriff Ball (by mailing the requests to her attorney at the address in the notice of appearance) to obtain information that will help him identify the defendants.

For example, Plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because Plaintiff does not state a claim against Sheriff Ball, Plaintiff's discovery requests must be limited to information or documents that will help him learn the medical staff member's name. Plaintiff may not ask Sheriff Ball about any other topic, and Sheriff Ball is under no obligation to respond to requests about any other topic.

After Plaintiff learns the names of the defendants, he should file a motion to substitute the defendants' names for the John Doe placeholders. Generally, a plaintiff must file an amended complaint when adding a defendant, but because Plaintiff is *pro se* and his allegations against the defendants are clearly stated in the complaint, the Court will allow him to substitute the defendants' names for the placeholders. The Court will dismiss Sheriff Ball as a defendant once Plaintiff identifies the defendants' names. At that point, the Court will order service of the complaint on the defendants and set a deadline for the defendants to respond to Plaintiff's request for a temporary restraining order and injunctive relief. After the defendants have an opportunity to respond to Plaintiff's complaint, the Court will set a deadline for discovery. During discovery, Plaintiff may serve discovery requests to obtain the information he believes he needs to prove his claim.

Plaintiff must identify the name of the John Doe Defendants within sixty days of Sheriff Ball's attorney filing a notice of appearance. If he does not or does not explain to the Court why he is unable to do so, the Court may dismiss this case based on Plaintiff's failure to diligently pursue it. *See* Civil L.R. 41(c).

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Milwaukee County Sheriff Denita Ball be added as a Defendant for the limited purpose of helping Plaintiff identify the name of the John Doe Defendants. The clerk's office will update the docket accordingly.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this Court, copies of the complaint and this order shall be electronically sent today to Milwaukee County for service on Sheriff Ball.

9

**IT IS FURTHER ORDERED** that Sheriff Ball does not have to respond to the complaint; however, she shall respond to discovery requests that Plaintiff serves in an effort to identify the John Doe Defendants' names. Sheriff Ball does not have to respond to discovery requests about any other topic.

**IT IS FURTHER ORDERED** that Plaintiff must identify the John Doe Defendants' names within 60 days of Sheriff Ball's attorney filing a notice of appearance. If Plaintiff does not identify the John Doe Defendants' names by the deadline or advise the Court why he is unable to do so, the Court may dismiss this case based on his failure to diligently prosecute it.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $350.00 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with Plaintiff's remaining balance to the receiving institution. A copy of this order shall be sent to Office of the Sheriff, Fiscal Operations Rm 224, 821 W State Street, Milwaukee, WI 53233.

**IT IS FURTHER ORDERED** that a copy of this order be sent to Milwaukee County Sheriff Denita Ball and Dennis Brand, 821 W. State Street, Room 224, Milwaukee, WI 53233.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all

10

inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.  Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Honorable Byron B. Conway
c/o Office of the Clerk
United States District Court
Eastern District of Wisconsin
125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners.  Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin on April 17, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

11