MICHAEL BLACKWELL,
                    Plaintiff,

            v.                                              Case No. 26-CV-96

JOHN DOE 1 et al.,
                    Defendants.

## ORDER

Plaintiff Michael Blackwell, who is incarcerated at the Milwaukee County Jail, is representing himself in this 42 U.S.C. § 1983 case. He is proceeding on Fourteenth Amendment claims based on his allegation that unidentified medical staff members failed to provide proper treatment for his Type 1 diabetes as well as a *Monell* claim. (ECF No. 10.) Because Plaintiff did not know the name of the medical staff members, the Court directed Sheriff Denita Ball to help Plaintiff identify the defendants. (*Id.*) The Court ordered Plaintiff to identify the unnamed defendants by June 22, 2026. (ECF No. 12.) On June 22, 2026, Plaintiff filed a motion to file an amended complaint and attached a proposed amended complaint that identifies the defendants. (ECF No. 14.) He also filed a motion for an extension of time, requesting that the Court accept his motion to amend as timely filed. (ECF No. 15.) Because Plaintiff filed a timely motion to amend, the Court grants Plaintiff's motion to amend, denies Plaintiff's motion for an extension of time as moot, and will screen the amended complaint pursuant to 28 U.S.C. § 1915A(b).

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE AMENDED COMPLAINT

In screening a complaint, the Court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citation omitted). The Court notes, however, that the allegations in the amended complaint are

2

just that, allegations; they are Plaintiff's version of the events that have purportedly occurred.  With this in mind, the Court will summarize Plaintiff's allegations as presented in the amended complaint.

At all times relevant to the amended complaint, Plaintiff was incarcerated at the Milwaukee County Jail.  Plaintiff was diagnosed with Type 1 diabetes in 2008.  Plaintiff was arrested on October 10, 2025, in Cook County, Illinois as a result of outstanding warrants.  On November 21, 2025, Plaintiff was transferred to Milwaukee, Wisconsin.  Upon his arrival to the Milwaukee Police Department, Plaintiff complained of high glucose levels, extreme burning sensations, chest pains, and trouble breathing.  He told the officer processing him that he has Type 1 diabetes and had not received insulin since 5:00 a.m. that morning.  Officers called paramedics, and the Milwaukee Fire Department responded.  Paramedics conducted an accu-check, confirmed that Plaintiff's glucose level was high, and took Plaintiff to the emergency room.  Plaintiff received rapid-acting insulin, and after six hours of observation, Plaintiff was released. (Am. Compl. at 4–6.)

Upon his return to the Milwaukee Police Department, Plaintiff was placed in an observation cell, and medical staff monitored Plaintiff's condition.  Medical staff administered rapid-acting insulin in accordance with the hospital's recommendations. (*Id.* at 6.)

At approximately 12:30 a.m. on November 22, 2025, Plaintiff was taken to the Milwaukee County Jail.  Plaintiff told jail staff that he had Type 1 diabetes and required numerous daily injections to sustain low glucose levels.  At approximately 7:00 a.m. that day, Plaintiff had cereal with milk and apple juice for breakfast.  Within 30 minutes, Plaintiff suffered extreme burning sensations, muscle stiffness, and chest pains as a result of his high glucose levels.  Plaintiff banged on his cell door until Officer Riley responded.  Plaintiff requested to see a nurse because he was experiencing a medical emergency. (*Id.*)

3

Nurse Jackie Malone examined Plaintiff and conducted an accu-check, which revealed that Plaintiff's glucose levels were high. Nurse Malone asked what types of insulin Plaintiff was taking, and Plaintiff responded that he was given Aspart rapid-acting insulin and Lantus 24-hour insulin. After speaking with Nurse Practitioner Tammi Brandt, Nurse Malone administered both types of insulin. Nurse Malone monitored Plaintiff until the end of her shift at 5:00 p.m. Nurse Practitioner Brandt prescribed Aspart rapid-acting insulin and Lantus insulin. She also had Plaintiff admitted into the infirmary for two days observation. (*Id.* at 6–7.)

Plaintiff was taken to the infirmary unit for observation on the evening of November 23, 2025. While in the medical unit, Plaintiff's glucose levels remained elevated. Plaintiff received Aspart rapid-acting insulin approximately four times a day and Lantus insulin in the evening. Plaintiff's glucose levels began to stabilize on November 25, 2025. Dr. Dawn Pulse informed Plaintiff that he would be released to general population. Dr. Pulse discontinued Plaintiff's prescription for Aspart rapid-acting insulin without discussing the decision with Plaintiff. Plaintiff was moved to the third floor of the Milwaukee County Jail on November 25, 2025. During the morning med pass, a nurse told Plaintiff that he would receive regular insulin. The nurse explained that rapid-acting insulin is not used within the Milwaukee County Jail. Plaintiff refused to take the regular insulin and explained to the nurse that regular insulin does not mitigate his Type 1 diabetes condition. (*Id.* at 7–9.)

That afternoon, a member from the medical unit arrived at Plaintiff's cell and asked why Plaintiff refused to take the insulin. Plaintiff explained that his endocrinologist determined that regular insulin does not lower Plaintiff's A1C score. The medical staff member explained that, as a policy, rapid-acting insulin would not be administered to a detainee confined within the jail. *Id.* Plaintiff filed numerous medical grievances stating that regular insulin does not work with his condition. (*Id.* at 9–10.)

4

On November 26, 2025, Plaintiff was seen by L. Donovan, who was designated as a provider. Plaintiff's blood sugar continued to be greater than 600 mml. Donovan explained that rapid-acting insulin is not used in the Milwaukee County Jail. After Plaintiff stated that the policy does not fit his chronic diabetic condition, he was returned to his cell. (*Id.* at 10–11.)

On December 2, 2025, Plaintiff was seen by Nurse Practitioner Heidi Medina. Plaintiff noted that he has high glucose levels after meals and that his blood sugar levels are in excess of 500 mml. Nurse Practitioner Medina explained the difference between regular insulin and rapid-acting insulin and stated that Wellpath has a policy of not using rapid-acting insulin. Even though Plaintiff explained that regular insulin does not control his glucose levels, Nurse Practitioner Medina said that he would not receive rapid-acting insulin and the policy would not change. (*Id.* at 11–12.)

On December 11, 2025, Plaintiff saw Nurse Practitioner Brittany Stroika, and he complained that regular insulin was not mitigating his excessive glucose levels after meals. Plaintiff asserts that Nurse Practitioner Stroika did not respond to his concerns. (*Id.* at 12.)

The next day, Plaintiff was given 19 units of regular insulin to address his high blood sugar levels. Plaintiff expressed his extreme discomfort to the nurse and returned to his cell to lay down. At approximately 1:40 p.m., a correctional officer asked Plaintiff if he was okay. Plaintiff responded that he experienced difficulty breathing, muscle tightness, and chest pains. The correctional officer called a medical emergency. Registered Nurse Carpenter responded to the medical emergency call. Plaintiff told RN Carpenter that he had a burning sensation in his feet, muscle stiffness, trouble breathing, and chest pains. He reported that his blood sugar level was 596 mml. RN Carpenter took Plaintiff to the medical unit, where she administered an additional 14 units of regular insulin. Plaintiff received 33 units of insulin in a three-hour period. After receiving the insulin, Plaintiff returned to his cell. Later that day, Plaintiff filed a grievance,

complaining that the regular insulin was not helping to control his glucose levels after meals and that his health concerns were not being addressed. Plaintiff received a response to his grievance advising that the medical director would be consulted. (*Id.* at 12–15.)

On December 16, 2025, at 4:00 p.m., Plaintiff was taken to the clinic to speak with Dr. Pulse. Dr. Pulse reiterated Wellpath's policy to not provide rapid-acting insulin and stated that regular insulin is helping Plaintiff because his glucose levels are low during the evening hours. Plaintiff responded that his glucose levels are lower in the evening because that is when he receives Lantus long-acting insulin. Dr. Pulse suggested increasing the amount of regular insulin, and Plaintiff returned to his cell. Later that evening, Plaintiff refused regular insulin because medical staff refused to work with him to address his concerns about taking regular insulin. (*Id.* at 15–16.)

On December 20, 2025, at approximately 7:00 p.m., Plaintiff was transported to Aurora Sinai Hospital's emergency unit. Plaintiff's blood sugar level was 500 mml. Plaintiff received 20 units of Lispro rapid-acting insulin and 12 units of Lantus insulin. After Plaintiff's blood sugar level read 162 mml, Plaintiff was discharged to the Milwaukee County Jail. (*Id.* at 16–17.)

### ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Because Plaintiff was a pretrial detainee at the relevant time, the Fourteenth Amendment's objective unreasonableness standard applies to his allegations that the defendants failed to provide proper treatment for his Type 1 diabetes.

Under this standard, once a pretrial detainee shows that a jail official's failure to act was purposeful and intentional, the sole question is an objective one: Did the defendant "take

6

reasonable available measures to abate the risk of serious harm?" *Pittman v. Madison Cty.*, 108 F.4th 561, 566, 572 (7th Cir. 2024). "The objective reasonableness of a decision to deny medical care . . . does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable [jail official] in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570. Thus, to state a claim under the Fourteenth Amendment standard, a plaintiff must allege that (1) the defendant acted purposefully, knowingly, or perhaps even recklessly, without regard to his subjective awareness of the risk of inaction and (2) the defendant's response to the medical condition was objectively unreasonable. *Id.* at 570–72. With this standard in mind, the Court will allow Plaintiff to proceed on a Fourteenth Amendment claim against Defendants Dr. Pulse, Nurse Practitioner Medina, and Nurse Practitioner Stroika based on his allegations that they failed to provide proper treatment for his Type 1 diabetes.

Plaintiff asserts that Wellpath LLC and Medical Director Imamura had a policy of only administering regular insulin within the Milwaukee County Jail, which caused Plaintiff to suffer irreparable harm and injury. He asserts that Defendants' conduct was intentional and reckless in violation of his constitutional rights. Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), municipalities may be liable for an employer's conduct if the employee injured the plaintiff in execution of an official policy, custom, or widespread practice. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012), *abrogation on other grounds recognized in Kemp v. Fulton Cty.*, 27 F.4th 491, 494 (7th Cir. 2022) (*Monell* framework applies to private company providing medical care at correctional facility). Based on the allegations in the amended complaint, Plaintiff may proceed on a *Monell* claim against Wellpath LLC. Because Plaintiff is proceeding on the *Monell* claim against Wellpath LLC,

7

a claim against Medical Director Imamura in her official capacity based on the same allegations would be redundant. *See Monell*, 436 U.S. at 690 n.55 (official-capacity suits generally represent another way of pleading an action against an entity of which the individual is an agent). Therefore, Medical Director Imamura will be terminated as a defendant.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to amend (ECF No. 14) is **GRANTED**. The Clerk is directed to detach and e-file the amended complaint (ECF No. 14-1).

**IT IS FURTHER ORDERED** that Plaintiff's motion for an extension of time (ECF No. 15) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the clerk's office terminate Milwaukee County Sheriff Denita Ball as a defendant.

**IT IS FURTHER ORDERED** that Medical Director Imamura is terminated as a defendant.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this Court, copies of Plaintiff's amended complaint and this order are being electronically sent today to Milwaukee County for service on Nurse Practitioner Heidi Medina and Nurse Practitioner Brittany Stroika.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this Court, Nurse Practitioner Heidi Medina and Nurse Practitioner Brittany Stroika shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Wellpath LLC and Dr. Dawn Pulse pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-

8

of-service packages is $8.00 per item mailed.  The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3).  Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.  The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Wellpath LLC and Dr. Dawn Pulse shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that, once Defendants file responsive pleadings to the amended complaint, the Court will set a deadline for Defendants to respond to Plaintiff's request for a temporary restraining order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.  The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.  Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable Byron B. Conway
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin on June 30, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge

10